RECEIVED
USDC, CLERK, CHARLESTON, SC
2010 DEC 29 P 2: 35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mark Carrie, | C.A. No. 2:10-0960-RMG-RSC |
| Petitioner, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| John Owens, Warden, | |
| Respondent. | |

This habeas corpus petition brought pursuant to 28 U.S.C. § 2241 by a federal prisoner proceeding <u>pro se</u> and <u>in forma pauperis</u> is before the undersigned United States Magistrate Judge foe a report and recommendation on the respondents' motion for summary judgment. 28 U.S.C. § 636(b).

The respondent filed his motion for summary judgment on July 1, 2010. The petitioner opposed the motion on July 9, 2020. On July 12, 2010, the petitioner was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). On July 19, 2010, the respondent filed a reply to the opposition, and on July 30, 2010, the petitioner filed a sur reply. Hence, it appears consideration of the motions is appropriate.

1

## PROCEDURAL BACKGROUND

On April 1, 1998, the petitioner, Mark Carrie, was arrested by the Miami-Dade Police on state charges of Aggravated Stalking and Carrying a Concealed Weapon. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, Declaration of J.R. Johnson, ¶ 3). Carrie was released the following day and the charges were dropped/abandoned on May 12, 1998. (Id.).

Carrie was arrested again on July 28, 1999, by the Miami-Dade Police for state charges of Carrying a Concealed Weapon, Grand Theft Firearm, Larceny, and Possession of Marijuana. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 4). He was released the following day. (Id.). The weapons charges were nolle prossed on May 19, 2000, while the remaining charges were dropped/abandoned on August 18, 1999. (Id.)

Carrie was arrested again by Miami-Dade Police on November 5, 1999, for Aggravated Robbery on a Law Enforcement Officer, Resisting an Officer, Illegal Alcohol Consumption and Possession of a Weapon. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶5). He was released on bond November 8, 1999. (Id.). He was sentenced to two days confinement for Resisting an Officer in Case #F99037522. (Id.). The remaining charges were nolle prossed on December 18, 2000. (Id.)

On February 21, 2001, Carrie was arrested by federal agents with the Bureau of Alcohol, Tobacco and Firearms ("ATF") for Possession of a Weapon and Fraud. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 6). He remained confined after that date. (Id.). On November 20, 2002, Carrie was sentenced in the U.S. District Court for the Southern District of Florida to 168 months incarceration for violations of 18 U.S.C. § 922(g) (felon in possession of a firearm and ammunition), 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 924(a)(1)(A) (false statements to a firearms dealer). (Respondent's Motion to Dismiss (Docket #12), also Exhibit C, relevant pages of Judgment and Commitment Order in United States v. Mark Carrie, Case. Civ. #00-928-CR-GOLD (SD FL)) (hereinafter "the first sentence"). Carrie began service of this federal sentence the day it was imposed. (Respondent's Motion to Dismiss (Docket #12) Exhibit A, also Exhibit B, ¶ 7). Importantly, at that time Carrie was not given credit for the period from his February 21, 2001, arrest until his sentencing date, November 20, 2002, although the judge verbally indicated that the sentence would begin to run on February 21, 2001. (Transcript pp. 44-45).

On December 6, 2004, while serving the 168-month federal sentence, Carrie was sentenced in the U.S. District Court for the Southern District of Florida to another 384-month term for violation of 21 U.S.C. § 846 (conspiracy to possess with intent

On February 21, 2001, Carrie was arrested by federal agents with the Bureau of Alcohol, Tobacco and Firearms ("ATF") for Possession of a Weapon and Fraud. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 6). He remained confined after that date. (Id.). On November 20, 2002, Carrie was sentenced in the U.S. District Court for the Southern District of Florida to 168 months incarceration for violations of 18 U.S.C. § 922(g) (felon in possession of a firearm and ammunition), 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 924(a)(1)(A) (false statements to a firearms dealer). (Respondent's Motion to Dismiss (Docket #12), also Exhibit C, relevant pages of Judgment and Commitment Order in United States v. Mark Carrie, Case. Civ. #00-928-CR-GOLD (SD FL)) (hereinafter "the first sentence"). Carrie began service of this federal sentence the day it was imposed. (Respondent's Motion to Dismiss (Docket #12) Exhibit A, also Exhibit B, ¶ 7). Importantly, at that time Carrie was not given credit for the period from his February 21, 2001, arrest until his sentencing date, November 20, 2002, although the judge verbally indicated that the sentence would begin to run on February 21, 2001. (Transcript pp. 44-45).

On December 6, 2004, while serving the 168-month federal sentence, Carrie was sentenced in the U.S. District Court for the Southern District of Florida to another 384-month term for violation of 21 U.S.C. § 846 (conspiracy to possess with intent

to distribute cocaine and cocaine base) and 18 U.S.C. § 1956(h) (conspiracy to launder money). (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 8, also Exhibit D, relevant pages of the Judgment and Commitment Order in <u>United States v. Mark Carrie</u>, Case #01-892-CR-ALTONAGA (SD FL)(hereinafter "the second sentence"). This sentence was ordered to run concurrently with the prior term imposed in the first sentence. (Respondent's Motion to Dismiss (Docket #12) Exhibit D, pg. 3). At the sentencing, the Court indicated its intention to apply U.S. Sentencing Guideline ("USSG") 5G1.3 and decrease Carrie's sentence in order to give him "credit" for time that the Bureau's sentence computation would not apply, i.e., the period from his February 21, 2001, arrest until his sentencing date, November 20, 2002. However, the Judgment and Commitment Order did not reflect this credit, the 5G1.3 modification. (Respondent's Motion to Dismiss (Docket #12) Exhibit D). Thus, when Carrie's sentences were aggregated and a computation was completed, he did not receive the credit the judge ordered at sentencing. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 9).

On December 5, 2007, the Court reduced Carrie's 384 month term to 248 months. (Respondent's Motion to Dismiss (Docket #12) Exhibit E, Order dated December 5, 2007). There was discussion during the hearing about the fact that the Bureau had not computed the sentence in accordance with the Court's intention,

so the Court reduced the sentence by 21 months "to account for her intentions at sentencing," which gave Carrie the 5G1.3 offset. (Respondent's Motion to Dismiss (Docket #12) Exhibit F, Criminal Minutes).

After the reduction in the second sentence, the Bureau recalculated Carrie's sentences. The two terms were aggregated as required by 18 U.S.C. § 3584(c).[1] (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 11). First, the full term date of the first term was computed. This was calculated by taking the date the sentence was imposed (11-20-2002) and adding the total sentence length (168 months or 14 years) to determine a full term date of November 19, 2016. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 12). Next, the full term date was computed for the second sentence. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 13). This term began on December 6, 2004, and was to run for 248 months (20 years and 8 months). (Id.). This resulted in a full term date of August 5, 2025, on the second sentence. (Id.). Subtracting the first sentence full term date (11-20-2002) from the second sentence full term date (11-19-2025) resulted in an overlap period of

---

[1] Two concurrent sentences imposed at different times are aggregated by determining the full term date of each sentence individually. The full term date of the first sentence is subtracted from the full term date of the second term, which determines the amount of "overlap" between the two terms. The length of the original sentence is then added to the overlap in order to produce the total length of the aggregated term.

eight years, eight months and 17 days. (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 14). After adding the overlap to the length of the first term, the BOP determined that the total aggregate term is 22 years, eight months and 17 days (14 years of original sentence + 8-yr, 8-mo, 17-day overlap of second sentence). (Respondent's Motion to Dismiss (Docket #12) Exhibit B, ¶ 15).

Carrie was awarded 643 days of prior custody credit against this aggregate term. (Respondent's Motion to Dismiss (Docket #12) Exhibit A, pg. 3, also Exhibit B, ¶ 16).

## CONTROLLING LAW

### Computation of Sentences

The execution of federal criminal sentences and the computation of jail time is an administrative function within the authority of the Attorney General, who has delegated this task to the Bureau of Prisons. United States v. Wilson, 503 U.S. 329, 335 (1992). This function includes responsibility for computing pre-sentence time credits and determining a sentence termination date once the defendant actually commences serving his sentence. Id. at 333-35.

It is well settled that determinations as to the credit which a defendant is due for time spent in federal custody are to be made by the Bureau of Prisons and not the sentencing court. See, Wilson, 503 U.S. at 334 ("[Section] 3585(b) does not

6

authorize a district court to compute the credit at sentencing."); United States v. Luna-Reynoso, 258 F.3d 111, 117 (2d Cir. 2001) ("the credit to be granted a defendant under § 3585(b) for time during which he was held in federal custody prior to sentencing is administered by the Bureau of Prisons."); Werber v. United States, 149 F.3d 172, 179 (2d Cir. 1998) ("only the BOP is entitled to give credit for time served prior to the commencement of a sentence.").

## U.S.S.G. 5G1.3

As noted, the Bureau of Prisons is responsible for the calculation of an inmate's sentence and has the authority to make determinations about the applicability of presentence credits. Wilson, 503 U.S. at 334. However, a court is free to make adjustments to a federal sentence in accordance with U.S. Sentencing Guideline 5G1.3(b) if the "undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense." In that case, Application Note 2 states that "the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."

7

Section 5G1.3(b) concerns situations where a defendant is facing sentencing in two jurisdictions for essentially the same criminal behavior, and such sentencing could result in the defendant serving a substantially longer term that appropriate for the behavior. See, e.g., Witte v. United States, 515 U.S. 389, 405 (1995); United States v. Descally, 254 F.3d 1328, 1332-33 (11th Cir. 2001). Section 5G1.3 "only provides for sentence reduction for the portion of a related, undischarged ... sentence that has already been served." United States v. Chiles, 217 F.3d 841, supra, 2000 WL 992249 at *1 (4th Cir. 2000) (emphasis in original).

## DISCUSSION

A review of the record and relevant case law indicates that the respondent's motion should be granted and this action ended.

As an initial matter, the parties agree that the petitioner has properly exhausted his administrative remedies as explained in Kurfees v. I.N.S., 275 F.3d 332, 336 (4th Cir. 2001) and that he named the correct respondent as explained in Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004).

The respondent correctly argues that he is entitled to judgment as a matter of law.

The crux of this petition is the allegation that the petitioner's second sentence should begin to run on February 21, 2001. Carrie argues that because his second sentence does not

start until the date it was imposed, that he has somehow not been credited with his custody time. This is not the case.

A sentence cannot begin until the date it is imposed. Therefore, the second sentence cannot begin until December 6, 2004. That was considered in the aggregation of the terms. However, once the terms were aggregated, Carrie was given 643 days of prior custody credit, which includes the period from February 21, 2001, the date of his federal arrest, to the day before his first federal sentence was imposed. This time has been credited toward the aggregate federal term, thus he is not entitled to count these days a second time.

Carrie alleges that the sentencing judge meant for his federal term to date back to the date of his federal arrest. (DE 1-2, p. 28). Whether this was the Court's intent or not, "a federal sentence cannot commence prior to the date it is pronounced." Coloma v. Holder, 445 F.3d 1282, 1285 (11th Cir. 2006). Section 3585(a) provides that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A concurrent sentence commences on the date of its imposition, not on the date of commencement of the prior sentence or some earlier date. See, Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983). The

designation that a second term be served concurrently with a pre-existing term "does not mean that the two sentences hav[e] the same starting date because a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." Coloma, 445 F.3d at 1284 (internal quotations omitted); accord United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980). As a result of this difference in commencement dates, a sentence imposed after the commencement of a term already being served will not run in a fully concurrent manner with the first sentence. See, Taylor v. Holt, 309 Fed.Appx. 591, 592 -93 (3d Cir. 2009); Shelvy, 718 F.2d at 444; Flores, 616 F.2d at 841.

That is what properly occurred in the instant case. Carrie's federal term commenced on the date of imposition and ran concurrently with the remainder of his state term. (Exhibit B, ¶ 17). The court noted that, given the difference in the lengths of the two federal terms, the terms would be "concurrent, but certainly not coterminus." (DE 1-2, pg. 27, lines 22-24).

Additionally, if the Court intended to reduce the term pursuant to 5G1.3, it could have done so, as explained by defense counsel at the time of sentencing. (Id., p. 29). The Court could have identified how much credit was being applied and imposed a lesser term, but the judge did not do that. (Id., also, Exhibit B, ¶ 9 and Exhibit D).

In any event, this matter was resolved during the modification of the term on October 22, 2009. (Exhibits E and F). The Court was advised that the Bureau of Prisons had not computed the term in the manner the judge had intended. As a result, the judge granted an additional 21 month reduction to account for this time. (Exhibits E and F). Carrie is not entitled to relief.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondent's motion be granted and the petition be denied.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December 29, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).